UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LaVAE SCHWALM,<br><br>                   Plaintiff,<br>     vs.<br><br>TCF NATIONAL BANK,<br><br>                   Defendant. | CIV. 16-4074-KES<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION |

Plaintiff, LaVae Schwalm, brought this lawsuit against defendant, TCF National Bank (TCF). TCF moves to compel arbitration and to dismiss the complaint. Docket 7. Schwalm objects to defendant's motions. Docket 9. For the reasons stated below, the court grants defendant's motion to compel arbitration.

**FACTUAL BACKGROUND**

The facts, viewed in the light most favorable to Schwalm, the non-moving party, are:

In 2013, LaVae Schwalm began using Indeed.com to search for accounting positions in eastern South Dakota. Indeed.com is an online service that utilizes an algorithm to match applicants to potential employment opportunities and recommends certain employment opportunities to applicants. Indeed.com recommended several positions to Schwalm based on her geographical location and interests. After looking through Indeed.com's

recommendations, Schwalm picked jobs that interested her. Then, using information from Schwalm's previously uploaded resume, Indeed.com would populate the job applications and Schwalm would correct any errors and answer the prescreening questions before approving and submitting the application.

In November 2013, Schwalm states that she recalls Indeed.com recommending an account services position at TCF to her. Schwalm admits that she indicated to Indeed.com that she was interested in the position, but she denies that she ever submitted an application. In November of 2013, Schwalm had an in-person interview at TCF where she presented a physical copy of her resume. She was not hired. In January of 2014, Schwalm had another in-person interview at TCF. Schwalm avers that during the interview one of the interviewers indicated that TCF did not have an application for her. But TCF determined that her resume was sufficient and offered her a job. Schwalm began working at TCF on February 3, 2014.

TCF's Dispute Resolution Policy (DRP) allows employees to opt out of the agreement within 60 calendar days of their start date. Schwalm states that she did not opt out of the policy because she did not know about or understand the policy. She claims that TCF never gave her a copy of the DRP and never explained the DRP to her. TCF, however, submitted a copy of its "Employee Acknowledgement Receipt" dated February 6, 2014, that was signed by LaVae Schwalm. Docket 8-1 at 16. The Acknowledgment Receipt indicates that

Schwalm received a copy of the "Employee Highlights" and "Dispute Resolution Policy." *Id.*

During Schwalm's employment, she made three discrimination and harassment complaints against her supervisor to TCF supervisors and its Human Resources representatives. The complaints were dated February 16, 2015, March 13, 2015, and March 14, 2015. On March 20, 2015, Schwalm met with TCF supervisors about her complaints. Afterwards, TCF informed Schwalm that her supervisor had been disciplined for his behavior. In May 2015, Schwalm again reported to TCF's Human Resources that she remained in a hostile work environment and required medical leave because of ongoing discriminatory treatment. Human Resources granted the medical leave. On June 1, 2015, TCF terminated Schwalm's employment.

Schwalm then filed this action against TCF alleging age discrimination and retaliation. TCF asserts that these claims must be resolved under its arbitration agreement. Schwalm denies that she entered into the arbitration agreement.

## STANDARD OF REVIEW

Whether or not parties entered into an arbitration agreement falls to judicial determination. *Neb. Mach. Co. v. Cargotec Solutions, LLC*, 762 F.3d 737, 741 (8th Cir. 2014). The Federal Arbitration Act does not specify what evidentiary standard parties seeking to avoid arbitration must meet. *Id.* at 742. But courts have analyzed the issue using a summary judgment standard—viewing the evidence in the light most favorable to the non-moving party. *Id.*

3

**DISCUSSION**

This case deals with a question of law as to whether the controversy between Schwalm and TCF is covered by a valid arbitration agreement and should therefore be dismissed and directed to proceed to arbitration. Through the Federal Arbitration Act (FAA), Congress established a policy in favor of arbitration. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The FAA "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). The FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (citing 9 U.S.C. §§ 3, 4). The "court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus. Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). "However, a party who has not agreed to arbitrate a dispute cannot be forced to do so." *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (citing *AT&T Tech, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

**I.     LaVae Schwalm and TCF entered into a valid arbitration agreement.**

The first issue for this court to decide is whether there is a valid arbitration agreement between the parties. Under the FAA, state law contract

4

principles govern the formation of an arbitration agreement. *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834 (8th Cir. 1997); *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In South Dakota, the "elements essential to the existence of a contract are: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." SDCL § 53-1-2.

    TCF's employment application, when filled out and signed, creates a binding arbitration agreement. When a potential applicant applies for a position with TCF, the applicant is provided with an explanation of the DRP. The first sentence of the DRP states that "[b]y applying for employment or accepting employment, you agree with TCF and TCF agrees with you to resolve all Covered Claims pursuant to TCF's Dispute Resolution Policy (DRP)." Docket 8-1 at 12. The online application further explains that an eSignature on the application binds a person to this agreement. *Id.* Thus, if a person applies to a position at TCF, they are consenting to be bound by the DRP in consideration for TCF accepting their application.

    Here, Schwalm denies that she is bound by the DRP for several reasons. First, she denies that she ever filled out or submitted the November 26 application. Docket 9 at 9. Instead, she argues that Indeed.com filled out and submitted the application on her behalf and without her permission. *Id.* Second, Schwalm states that she was not ultimately hired for the job described in the November 26 application, so any agreement she made in that application is void. *Id.* at 6. Third, Schwalm denies that she ever received a copy of the

5

DRP and did not understand what the DRP meant, and thus, did not voluntarily consent to be bound by the DRP. *Id.* And finally, Schwalm argues that, even if the court finds she agreed to the DRP, that the DRP is unconscionable. *Id.* at 13.

### A. Schwalm's electronic signature on the November 26 application is attributable to her.

The court first responds to Schwalm's argument that the electronic signature on the November 26 application cannot be attributed to her. "An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner . . . to determine the person to which the electronic record or electronic signature was attributable." SDCL § 53-12-21. "The effect of an electronic record or electronic signature attributed to a person under § 53-12-21 is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law." SDCL § 53-12-22.

First, the fact that Indeed.com populates the fields for Schwalm does not make the application less attributable to her under South Dakota law. *See* SDCL § 53-12-32 (stating that a contract can be formed when a person initiates an electronic agent to take an action that the person knows or should know will form a contract). The fact that Schwalm would review the application and then approve it to be submitted is a sufficient action to bind her to the application. Second, Schwalm avers in her affidavit that generally, Indeed.com

6

would suggest job openings to her and she would indicate whether or not she was interested in the job. Once she indicated interest in a job opening, Indeed.com would populate the fields of the application for her, and she would check the application, answer the prescreening questions, and approve the application. Docket 9-1 ¶ 3. Thus, Schwalm's own description of Indeed.com's services indicates that Indeed.com would not apply to a position on behalf of a job seeker without the job seeker's approval.[1]

Schwalm's argument that the job described in the November 26 application is not the same job she eventually received[2] is irrelevant to the question of whether she is bound by the DRP. The language in the DRP on the November 26 application states "by applying for employment or accepting employment, you agree with TCF, and TCF agrees with you, to resolve all Covered Claims pursuant to TCF's Dispute Resolution Policy." Docket 8-1 at 12. Thus, Schwalm's agreement to be bound by the DRP occurred once she applied for the job regardless of whether she actually received that job. Further, the application also clearly states that "TCF may consider you for a

---

[1] It should be noted that, according to TCF's record of the November 26 application, Schwalm actually submitted her online application through CareerBuilder.com instead of Indeed.com. Docket 8-1 at 11. For purposes of this analysis, it is not relevant which online website Schwalm utilized to apply to the position because she ultimately signed the application and agreed to the DRP.

[2] It should also be noted that TCF contends that the job she applied for in the November 26 application is the job it hired her for. This contention is evidenced by the offer letter submitted by TCF to the Court. The November 26 application was for the "Operations Spec II-Batch-Sioux Falls" job position. Docket 8-1 at 11. The position's recruiter was Kristin Paulson and the Hiring Manager was Chet Carlton. *Id.* The offer letter dated January 15, 2014, is for the "Operations Spec II-Batch-Sioux Falls" position. Docket 13-1 at 2. The listed Manager is Chet Carlton and the Recruiter is Kristin Paulson. *Id.*

position other than the position you directly applied for, and . . . your electronic consent below will also be binding to that position." Docket 8-1 at 12.

A substantial number of factors further indicates that Schwalm submitted the November 26 application. TCF provided documents showing that LaVae Schwalm applied for the Operations Spec II position in Sioux Falls. Docket 8-1 at 11. It also indicates that Schwalm electronically signed the application on November 26, 2013, from a computer with the IP address 50.83.1.120. *Id.* The IP address used to sign the application is an IP address originating from a computer in Brookings, SD, where Schwalm was living in 2013. Docket 10-2 at 4. Finally, Schwalm testifies that Indeed.com would require her to fill out the prescreening questions with each application, and the application submitted to TCF on November 26 included answered prescreening questions. Docket 8-1 at 11. Based on the context and circumstances surrounding the November 26 online application, the court finds that the electronic signature posted to the application is attributable to Schwalm.

### B. Schwalm received a copy of and understood the terms of the DRP.

Next the court addresses Schwalm's claim that she was never given a copy of the DRP and it was never explained to her, so she did not know about the 60-day opt out and did not voluntarily consent to the agreement. In South Dakota, there is a presumption that a party to an agreement reads and understands the contents of what she signs. *Farlow v. Chambers*, 110 N.W. 94

(1907). Thus Schwalm's argument is defeated by her initials on the Employee Acknowledge Form dated February 6, 2014. Docket 8-2 at 5. The form states "I acknowledge receipt of copies of the TCF National Bank Employee Policy Highlights. I understand that it is my responsibility to read the material and become familiar with the policies explained." Docket 8-2 at 5.  Schwalm's initials are next to "Dispute Resolution Policy" indicating that she received a copy of the policy and understood its terms. *Id.* Also, an explanation of the DRP as well as directions on where an employee can access a full copy of the DRP is easily found in the Policy Highlights handbook. Docket 13-5 at 11. Thus, Schwalm signed a statement indicating that she received two copies and understood the explanations of the DRP. Given this evidence the court finds that Schwalm had notice of the DRP and the 60-day opt out.

      Schwalm points to the sentence in the Acknowledgment Form that reads "I agree that the policies and guidelines explained in this brochure do not, and are not intended to constitute an employment contract with TCF" as evidence that she did not agree to the DRP. Docket 9 at 2. But the purpose of the Acknowledgment Form was not to create an employment contract with TCF. Rather, it was a document showing that Schwalm received and understood the DRP. As explained above, Schwalm agreed to be bound by the DRP when she submitted the November 26 employment application, and her initials on the Acknowledgment Form demonstrate that she received a copy of the DRP and understood its contents.  Thus the court rejects Schwalm's argument that she did not voluntarily consent to the DRP.

9

### C. TCF's DRP is neither procedurally nor substantively unconscionable.

Finally, the court addresses Schwalm's argument that the DRP is an unconscionable adhesion contract. The South Dakota Supreme Court defined unconscionable contracts to be " '[o]ne-sided agreements without a remedy for another party's breach.' " *Baldwin v. Nat'l Coll.*, 537 N.W.2d 14, 17 (S.D. 1995) (quoting *Rozeboom v. Nw. Bell Tel. Co.*, 358 N.W.2d 241, 244-45 (S.D. 1984)). When evaluating the unconscionability of a contract the court can consider both substantive and procedural unconscionability. The procedural analysis asks how the contract was presented. A contract presented to one party on a "take it or leave it" basis is considered an adhesion contract. *Baldwin*, 537 N.W.2d at 18. An adhesion contract, while not presumptively unconscionable, is construed against the drafting party with "special scrutiny" to determine if it is unconscionable. *Rozeboom*, 358 N.W.2d at 245. The substantive analysis asks whether the contracts contains terms that are unreasonable, one-sided, or oppressive. *Nygaard v. Sioux Valley Hosps.*, 731 N.W.2d 184, 195 (S.D. 2007). In scrutinizing the contract, the court looks to the bargaining power between the parties and the terms of the contract. *Id.*

First, the court will determine if the DRP is procedurally unconscionable. Schwalm argues that TCF's DRP is an unenforceable contract of adhesion because there was unequal bargaining power between TCF and Schwalm and the DRP was presented to Schwalm in a "take it or leave it" fashion with no ability to negotiate the terms. Docket 9 at 14-17. In *Baker v. Science*

*Applications Int'l Corp.*, No. Civ. 06-4096, 2006 WL 2708546, at *2, (D.S.D. Sept. 21, 2006), the court found that an arbitration agreement in an employment contract was not a contract of adhesion and was enforceable. In *Baker*, the employer offered the employee employment "on the condition that [the employee] sign the Arbitration Agreement." *Id.* The court quoted the Supreme Court stating that " 'there will often be unequal bargaining power between employers and employees' " but " 'mere inequality in bargaining power. . . is not sufficient to hold that arbitration agreements are never enforceable in the employment context.' " *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32-33 (1991)). Despite the uneven bargaining power, the court stated that the employee could have declined employment with the employer and sought employment elsewhere, so it was not an adhesion contract. *Id.* Absent a showing of fraud or overwhelming economic power, the court found that there was no reason to invalidate the arbitration agreement. *Baker*, 2006 WL 2708546, at *3.

Here, Schwalm would not have had to decline employment to avoid the arbitration agreement. She had the option to opt out of the arbitration agreement and still remain employed with TCF. This was hardly a situation where TCF presented the contract in a "take it or leave it" manner because Schwalm did not have to "take it or leave." In other words, she had the ability to negotiate the terms. Thus, this was not an adhesion contract and it was not procedurally unconscionable.

11

Second, the court must determine if the DRP is substantively unconscionable. Schwalm argues that the terms of the DRP are substantively unconscionable because it lacks mutuality. In South Dakota the courts focus on the existence of "overly harsh or one-sided terms" when deciding whether a contract is substantively unconscionable *Johnson v. John Deere Co.*, 306 N.W.2d 231, 237 (S.D. 1981). For example, in *Rozeboom*, the South Dakota Supreme Court found that a liability limitation was substantively unconscionable because it limited the plaintiff's available damages against defendant to the price he paid for a Yellow Pages advertisement. *Rozeboom*, 358 N.W.2d at 245. The Court in *Rozeboom* reasoned that limiting remedies was overly harsh in conjunction with the fact that the plaintiff did not have any bargaining power when signing the contract and the defendant maintained a monopoly within the telecommunications industry. *Id.* The court in *Baker* also discussed and distinguished between a limitation on liability and an arbitration clause. In *Baker,* the court stated that "there is no limitation of [p]laintiff's damages. . . [and] there is a national policy favoring arbitration, but there is no such policy favoring limitation of liability clauses." *Baker*, 2006 WL 2708546, at 3.

Here, the DRP does not limit Schwalm's remedies against TCF, it simply governs the forum in which she must first pursue her remedies. Also, unlike the plaintiff in *Rozeboom*, Schwalm had bargaining power because she could choose to opt out of the DRP and TCF does not maintain a monopoly in the

12

banking industry.  Based on South Dakota contract law, the arbitration clause is not substantively unconscionable.

South Dakota has not directly dealt with the question of whether an arbitration clause that lacks mutuality is unconscionable, so Schwalm cites to a non-binding opinion in California to support her claim that TCF's arbitration clause lacks mutuality and is therefore unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 99 Cal. Rptr. 2d 745, 770 (Cal. 2000). In *Armendariz*, the California Supreme Court found that the arbitration agreement lacked mutuality because the language of the agreement specifically required the employee to arbitrate wrongful termination claims but did not contain any language that required the employer to arbitrate any claims. *Id.* at 772. The Court also cited to other cases where a lack of mutuality had been found because arbitration agreement explicitly excluded the employer from the arbitration agreement. *Id.* But in this case, the DRP explicitly requires TCF to arbitrate its claims against the employee. The DRP states that "[t]his means that you and TCF will not have a right to bring a lawsuit against one another  . . . regarding Covered Claims." Docket 8-1 at 5. This type of language is absent in the *Armendariz* case as well as the other cases *Armendariz* relies on. Thus, TCF's DRP does not lack mutuality.

This court finds that TCF and Schwalm entered into a binding arbitration agreement when Schwalm submitted her November 26 application. The court further finds that TCF's DRP is not unconscionable and is enforceable.

## II.   The Arbitration Agreement encompasses Schwalm's claim.

Finally, the court must determine if the DRP encompasses Schwalm's claim against TCF. A court liberally interprets the scope of an arbitration agreement, with any doubts decided in favor of arbitration. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001). When deciding on the scope of an agreement, the court asks only whether the parties agreed to arbitrate a particular claim without reaching the merits of the claim. *Kansas City S. Transp. Co. v. Teamsters Local 41*, 126 F.3d 1059, 1067 (8th Cir. 1997).

Schwalm does not dispute that the DRP explicitly encompasses age discrimination claims and retaliation claims for protected activity. Instead, she argues that because TCF arbitrarily applies the DRP to discrimination claims and did not follow protocol as outlined in the DRP, her claims should not be subject to arbitration. Docket 9 at 12-13. Any argument that TCF did not follow its own protocol in handling Schwalm's discrimination complaints goes to the merits of her discrimination claim. This court is only tasked with determining if Scwalm's claims for age discrimination and retaliation fall within the DRP and not whether TCF properly complied with the DRP. *Kansas City S. Transp. Co.*, 126 F.3d at 1067.  This court agrees with the parties that Schwalm's age discrimination and retaliation claims are within the DRP's scope.[3]

---

[3] The DRP explicitly states that it applies to age discrimination claims arising under federal law and retaliation claims for protected activity. *See* Docket 8-1 at 5.
>    Covered claims include, but are not limited to, the following:
>    1. Claims relating to involuntary termination, such as  layoffs and discharges (including constructive discharges);

14

## CONCLUSION

The court finds that LeVae Schwalm agreed to a valid arbitration agreement with TCF, and that Schwalm's age discrimination and retaliation claims are within the scope of that agreement.

Thus, it is ORDERED that defendant's motion to compel arbitration (Docket 7) is granted.

Dated December 28, 2016.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

---

    2. Employment discrimination and harassment claims,    based on age . . .(including, but not limited to, claims pursuant to the Civil Rights Acts of 1866, 1964, and    1991, the Age Discrimination in Employment Act and the Americans with Disabilities Act);
    3. Retaliation claims for legally protected activity and/or    whistleblowing . . .;

*Id.*